UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KELLY ARCHAMBAULT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:16-cv-00104-JAW |
| | ) | |
| GC SERVICES LIMITED | ) | |
| PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR ATTORNEY'S FEES**

The Court awards Plaintiff most but not all of the attorney's fees she has requested under the fee-shifting provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Maine Fair Debt Collection Practices Act, 32 M.R.S. § 11001 *et seq.*

## I. BACKGROUND

On February 22, 2016, Kelly Archambault filed a complaint under the Fair Debt Collection Practices Act (FDCPA) and under the Maine Fair Debt Collection Practices Act (MFDCPA), alleging that GC Services Limited Partnership (GC) violated both statutes by failing to provide her with statutorily-required validation notices. *Compl.* (ECF No. 1). Ms. Archambault served GC on March 1, 2016. *Summons in a Civil Action and Proof of Serv.* (ECF No. 4). On March 14, 2016, before GC answered the Complaint, Ms. Archambault filed a notice of settlement. *Notice of Acceptance of Rule 68 Offer of J.* (ECF No. 5). Ms. Archambault accepted a settlement

of $1,000 "plus costs of the action, together with a reasonable attorney's fee as determined by the Court." *Id.* at 1.

On March 31, 2016, Ms. Archambault filed a motion for attorney's fees. *Pl. Kelly Archambault's Counsel's Claim for Fees and Expenses* (ECF No. 10) (*Pl.'s Mot.*). On April 21, 2016, GC filed its opposition to the motion, which it amended the following day. *Def., GC Servs. Limited Partnership's, Opp'n to Pl.'s Claim for Fees* (ECF No. 12); *Def., GC Servs. Limited Partnership's, First Am. Opp'n to Pl.'s Claim for Fees* (ECF No. 14) (*Def.'s Opp'n*). On May 5, 2016, Ms. Archambault replied. *Pl.'s Reply Mem. in Further Supp. of Pl.'s Claim for Fees* (ECF No. 16) (*Pl.'s Reply*).

## II.   THE PARTIES' POSITIONS

### A.   The Plaintiff's Motion

Ms. Archambault originally sought an order awarding her $5,870.00 in fees.[1] *Pl.'s Mot.* at 7. She bases this claim on legal work performed by two attorneys, Andrea Bopp Stark and Elizabeth Miller. *Id.* at 1-2. Attorney Stark says that she devoted 16.3 hours to the case; Attorney Miller says that she devoted 6 hours to the case. *Id.* Attach. 1 *Aff. of Andrea Bopp Stark in Supp. of Pl.'s Mot. for Award of Att'ys Fees* ¶ 17 (*Stark Aff.*); *id.* Attach. 2 *Aff. of Elizabeth A. Miller in Supp. of Pl.'s Mot. for Award of Att'ys Fees* ¶ 8 (*Miller Aff.*). Attorney Stark's hourly rate is $285.00; Attorney Miller's is $350; Attorney Stark's paralegal's is $115.00. *Stark Aff.* ¶ 17; *Miller* ¶ 8. Both Attorneys Stark and Miller reduced their normal hourly rate to $200 for matters relating to the fee application. *Stark Aff.* ¶ 22; *Miller Aff.* ¶ 9. Attorney Stark is

---

[1]     The parties agree that GC will reimburse Ms. Archambault $427.65 in taxable costs. *Pl.'s Mot.* at 1; *Def.'s Opp'n* at 1 n.1. The only matter in dispute is the amount of the attorney's fees.

requesting 11.3 hours at $285 per hour, 2.7 hours at $200 per hour, and 2.3 hours at $115 per hour.  *Stark Aff.* ¶ 17.  Attorney Miller is requesting 4.3 hours at $350 per hour and 1.7 hours at $200 per hour.  *Miller Aff.* ¶ 8.  This initially totaled $5,870.00 in fees.  *Pl.'s Mot.* at 7.  However, Ms. Archambault is requesting an additional $1,783.00 for her counsel's work in replying to GC's response for a revised total of $7,653.00.  *Pl.'s Reply* at 6.

## B.   GC's Opposition

After reciting the brief history of this case, GC says that of the $5,870 in attorney's fees, "$2,944 . . . is reportedly to prepare a fee application."  *Def.'s Opp'n* ¶ 2.  Furthermore, GC asserts that Ms. Archambault's Complaint was "not complicated nor is the form unique."  *Id.* ¶ 3.  GC maintains that "it is unreasonable to suggest that handling this matter required over 22 hours of attorney's fees billed by two attorneys and a paralegal for a relatively simple matter that was immediately settled through an offer of judgment."  *Id.* ¶ 4.  It alleges that "[a]ll, or substantially all, of this work could have been performed by a paralegal or one associate billing at a significantly lower rate."  *Id.*  GC also argues that there was no need to involve co-counsel.  *Id.*  GC even contends that the Court should deny the fee application "in its entirety for failing to provide the Court with admissible, supporting documentation."  *Id.* ¶ 5.

GC's ground for urging the Court to deny the attorney's fee application in its entirety is its contention that Attorneys Stark and Miller supplied deficient affidavits in support of the motion.  *Id.* ¶ 8.  GC notes that Attorney Stark's jurat was

3

"inexplicably" unsigned and it argues her statement that the affidavit was being signed "under the pains and penalties of perjury" does not "qualify as an unsworn declaration under 28 U.S.C. § 1746" because it does not "substantially comply with the required wording in the statute." *Id.* Citing *Michael v. Liberty*, No. 07-103-P-H, 2007 WL 2251413 (D. Me. Aug. 1, 2007), GC says that the "same deficiencies plague" Attorney Miller's affidavit. *Id.* It contends that "[i]n the absence of an affidavit in support of Plaintiff's fee application, the application must be denied." *Id.*

GC turns then to the application itself. GC points out that even if the lodestar method of multiplying the number of hours by a reasonable hourly rate is applicable, the Court must determine whether the hours were "**productively spent**." *Id.* ¶ 9 (quoting *Nkihtaqmikon v. Bureau of Indian Affairs*, 723 F. Supp. 2d 272, 277 (D. Me. 2010)) (emphasis in GC memorandum). GC notes that courts typically subtract from the total figure "hours which **were duplicative**, unproductive, excessive, or otherwise unnecessary." *Id.* ¶ 10 (quoting *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992) (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984))) (emphasis in GC memorandum). Regarding duplicative work, GC complains that Ms. Archambault used the services of two lawyers when one should have done. *Id.* ¶¶ 11-13. It urges the Court to award only one lawyer, not two, for her work in this case. *Id.* ¶ 13. Specifically, it says that the Court should award Attorney Miller her fees of $1,845, but deny any fees to Attorney Stark. *Id.* Alternatively, GC argues that, given Attorney Stark's experience with FDCPA cases and her designation as lead counsel,

4

the Court should award only Attorney Stark her fees and should exclude Attorney Miller's fees. *Id.* ¶ 21.

Next, GC challenges ten entries in Attorney Stark's itemized bill, totaling $507.50 because, in its view, the work was unnecessary. *Id.* ¶ 14. GC disputes these items because it claims that, given her level of expertise, Attorney Stark should not have needed to "research the FDCPA, offers of judgment, or fee applications." *Id.* ¶ 15. GC also argues against six entries in Attorney Stark's bill that total $380 claiming that the work is clerical, not legal work. *Id.* ¶¶ 17-18.

GC also objects to Attorney Stark's hourly rate for seven entries on her attorney's fee application, contending that Attorney Stark erred in billing seven entries at her $285 hourly rate that should have been billed at the lower $200 hourly rate. *Id.* ¶¶ 19-20.

### C.   The Plaintiff's Reply

In her reply, Ms. Archambault first observes that GC does not dispute that she is entitled to reasonable attorney's fees pursuant to the FDCPA and the Offer of Judgment. *Pl.'s Reply* at 1. Ms. Archambault says in effect that GC itself is responsible for the "escalation in fees" attendant to the attorney's fee application because GC "refused to voluntarily pay" the original reasonable amount of fees. *Id.* at 1-2.

Turning to GC's issues with the attorney affidavits, Ms. Archambault says that the affidavits were "signed electronically in compliance with Local Rule 10 and the

notarized originals were held in the offices of Molleur Law." *Id.* at 2.  She also refers to the supplemental affidavits filed by both attorneys.  *Id.*

Next, noting that GC is a "very experienced and active debt collector," Ms. Archambault explains the work her counsel undertook to make certain they were not overlooking something "in order to give GC Services the benefit of the doubt before rushing to the courthouse."  *Id.*  She then itemizes the legal work her counsel performed and argues that the fact that GC capitulated so readily is a "testament to the successful groundwork laid by Plaintiff's counsel both before and after the complaint was filed." *Id.* at 2-3.

Ms. Archambault also defended Attorney Stark's use of Attorney Miller as co-counsel.  *Id.* at 3-4.  Ms. Archambault said that, as the only attorney in her firm conversant with consumer litigation, Attorney Stark concluded that she needed additional expertise and that she and Attorney Miller divided the work to be most efficient.  *Id.* at 3.  Attorneys Stark and Miller, Ms. Archambault contends, "voluntarily deleted hours from their time records before submission of the fee application to avoid any perceived duplication."  *Id.* at 4.  In fact, she noted that GC was represented by more than one attorney.  *Id.* at 3 n.1.

Finally, she blames GC for contesting the fee application and adds another $1,783.00 in fees for the reply memorandum.  *Id.* at 4-6.

## III.  DISCUSSION

### A.    Legal Standard

If a plaintiff is successful in an action to enforce liability against a debt collector, she is entitled to a "reasonable attorney's fee as determined by the court" under both the FDCPA and the MFDCPA.  15 U.S.C. § 1692k(a)(3); 32 M.R.S. § 11054(1)(D).  "An award of attorney's fees to successful plaintiffs under the FDCPA is obligatory."  *French v. Corp. Receivables, Inc.*, 489 F.3d 402, 403 (1st Cir. 2007).

### B.    The Defective Affidavits and Jurat

Under 28 U.S.C. § 1746, whenever any matter is required to be supported by a sworn declaration, the matter "may, with like force and effect, be supported . . . by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'"  *Id.* § 1746(2).  Here, the original affidavits by both Attorneys Stark and Miller say that they "hereby depose and state" and end with "Signed under the pains and penalties of perjury."  *Stark Aff.* at 1, 5; *Miller Aff.* at 1, 4.  The Stark affidavit contained an unsigned "acknowledgement" that essentially confirmed that Attorney Stark appeared before a notary public, but it did not state that she swore to the truth of the contents of the statement.  *Stark Aff.* at 6.  The Miller affidavit contained no such acknowledgement.  *Miller Aff.*

Citing *Michael v. Liberty*, GC argues that the "a purported affidavit that lacks either a jurat or the words prescribed by 28 U.S.C. § 1746—'I declare . . . under penalty of perjury that the foregoing is true and correct'—is fatally flawed."  *Def.'s*

*Opp'n* ¶ 8.  "In the absence of an affidavit in support of Plaintiff's fee application," GC contends, "the application must be denied."  *Id.*

The Court disagrees.  The problem with the statement in *Michael* was that it only contained the "depose and say" language and did not state that it was being made under the penalty of perjury.  *Michael*, 2007 WL 2251413, at *1; *see id. Aff. of David J. Michael* at 1-3 (ECF No. 2).

Moreover, in *Goldman, Anonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686 (1st Cir. 1993), the First Circuit stated that "[u]nder federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment."  *Id.* at 689 (citing 28 U.S.C. § 1746).  The original unsworn statements by both Attorney Stark and Attorney Miller on their face comply with the *Goldman* directive because a lie by either attorney would have subjected her to "the pains and penalties of perjury."[2]

In any event, both Attorney Stark and Attorney Miller cured whatever defect existed by filing supplemental affidavits that contain the following language:

> I declare under penalty of perjury that the foregoing is true and accurate.  Signed under the pains and penalties of perjury this 4th day of May 2016.

---

[2]     Even though the original attorney statements likely complied with the "substantially" requirement of 28 U.S.C. § 1746, the better practice is for the declarants to state that the statements are true.

8

*Pl.'s Reply* Attach. 1 *Aff. of Andrea Bopp Stark in Supp. of Pl.'s Reply to Def.'s Opp'n to Mot. for Award of Att'ys Fees* at 3; *id.* Attach. 2 *Suppl. Aff. of Elizabeth A. Miller in Supp. of Pl.'s Mot. for Award of Att'ys Fees* at 2 (*Suppl. Miller Aff.*).[3]

### C.    Proportionality

GC argues that Ms. Archambault's attorney's fees are grossly excessive in light of her modest recovery of only $1,000. *Def.'s Opp'n* ¶¶ 4-5 ("Plaintiff's attorney's fees application is patently unreasonable given . . . Plaintiff's modest recovery").  In *Spooner v. EEN, Inc.*, 644 F.3d 62 (1st Cir. 2011), a Copyright Act case, the First Circuit explained that "[t]he law . . . does not demand strict proportionality between fees and damages." *Id.* at 69.  In *Spooner*, for example, the First Circuit upheld an attorney's fees award of $98,745.80 when the plaintiff won injunctive relief and statutory damages, a total award of $40,000, which resulted in a net recovery of $10,000 after deducting a credit. *Id.* at 65-66, 71.  The *Spooner* Court acknowledged that the attorney's fees award was "quite large in relation to the statutory damages recovered." *Id.* at 69.  But the First Circuit emphasized that "a strict proportionality requirement would overlook entirely the value of other important litigation goals." *Id.*  The *Spooner* Court observed that a strict proportionality requirement "would frustrate the core purpose that underlies many fee-shifting statutes, which are designed to afford private parties the opportunity to vindicate rights that serve some broad public good." *Id.*; *see City of Riverside v. Rivera*, 477 U.S. 561, 580-81 (1986) (plurality opinion); *Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 177-78 (1st Cir.

---

[3]    Attorney Miller uses the language "true and correct" rather than "true and accurate" in her affidavit, a difference without significant distinction.  *Suppl. Miller Aff.* at 2.

2013) (Massachusetts law) (jury award of $7,650; attorney's fees of $104,626.34).   At the same time, the First Circuit has written that proportionality of the fee award to the amount of damages is "one item in the constellation of factors to be assessed." *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co.*, 745 F.3d 1, 6 (1st Cir. 2014).

Here, the Court does not view proportionality as a compelling factor.  The case involved a statutory claim limited to $1,000.[4]  15 U.S.C. § 1692k(a)(2)(A); 32 M.R.S. § 11054(1)(B) ("In the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000").  Yet, to proceed with this case, Ms. Archambault's lawyer was required do the legal groundwork that would have been necessary to prove a more substantial claim.

In *Central Pension*, the First Circuit quoted Judge Posner as saying that "[t]here are fixed costs of litigation," so that a rigid proportionality rule would allow defendants to "inflict[] with impunity small losses on the people whom they wrong." 745 F.3d at 6 (quoting *Orth v. Wis. State Emps. Union, Council 24*, 546 F.3d 868, 875 (7th Cir. 2008)).  In the debt collection context, to apply a rigid proportionality rule to a case where there is no actual demonstrable damage would allow a debt collector to ignore the requirements of federal and state law, confident that its violation would be sanctioned by a maximum award of $1,000 and by attorney's fees roughly limited to the amount of the award.  If the proportionality argument were rigorously applied, the potential benefit of the violation of the consumer protections of the FDCPA and

---

[4]       Ms. Archambault received only one defective collection letter from GC and the Court assumes that her actual damages were negligible.

MFDCPA could exceed the potential sanction. Furthermore, if plaintiff's counsel knew, based on a cap on the statutory award, that a substantial portion of her work would go uncompensated, she would have little incentive to do the legal spadework essential for successful litigation and debtors would as a practical matter find it difficult to recruit attorneys to represent them in small, but significant violations of the law.

### D.   Two Attorneys

GC contends that the Court should not approve the services of two attorneys and urges the Court to award attorney's fees to Attorney Miller alone. *Def.'s Opp'n* ¶¶ 11-13. In general, the First Circuit has recognized that "[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001). "Consequently, the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing." *Id.* At the same time, fee-shifting statutes are not intended "to serve as full employment or continuing education programs for lawyers and paralegals." *Id.* The First Circuit has advised that a "court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Id.*

Having reviewed the itemized time for each attorney, the Court does not find that Attorneys Stark and Miller overstaffed the case. Attorney Stark reviewed the GC billing notice to Ms. Archambault on February 10, 2016 and met with her for the first time on February 12, 2016, a total of 1.3 hours. *Stark Aff.* at 7. She then handed

11

the case over to Attorney Miller who worked on the case for two days, on February 16, 2016 and February 18, 2016, reviewing documents, performing a small amount of research, organizing the case, and drafting the complaint, a total of 3.7 hours. *Miller Aff.* at 5. During this interval when Attorney Miller worked on the case, Attorney Stark did not. Once Attorney Miller drafted and forwarded the complaint, Attorney Stark reviewed it and she remained Ms. Archambault's sole lawyer until March 9 and 10, 2016 when Attorney Miller reviewed and researched the offer of judgment, a total of 0.6 hours. *Stark Aff.* at 7-9; *Miller Aff.* at 5. In the Court's view, there is no reason to conclude that these two lawyers "[drew] on a battery of lawyers when one would have sufficed." *See Gay Officers*, 247 F.3d at 297.

This is especially true as Attorney Stark revealed that, although she has experience in other consumer protection statutes, the Archambault case was her first FDCPA and MFDCPA case in which she filed a notice of violation under 15 U.S.C. § 1692g and 32 M.R.S. § 11014. *Stark Aff.* ¶ 12. Furthermore, as she is the only attorney at the Molleur Law Office who is devoted full time to pursuing consumer litigation matters, she consulted with Attorney Miller because of her expertise. *Id.* ¶ 14. Unless the itemized billing indicates something to the contrary, the practice of joining with more experienced counsel can increase efficiency. To that end, the Court notes that GC itself has three counsel of record in this case, two from the law firm of Drummond Woodsum and one from the Texas law firm of Chamberlain, Hrdlicka, White, Williams, & Aughtry. Where GC concluded its defense of the case required

three lawyers, it is in an awkward position to decry Ms. Archambault's use of two to prosecute it.[5]

### E.   The Lodestar Approach

Ms. Archambault and GC agree that the Court should employ the lodestar approach in arriving at the appropriate fee. *Pl.'s Mot.* at 3; *Def.'s Opp'n* ¶¶ 9-10. The Court should determine the number of hours reasonably expended to prosecute the lawsuit and multiply that figure by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Gay Officers*, 247 F.3d at 295.

### 1.   Hourly Rates

Here, for general litigation, Attorney Stark's hourly rate is $285 and Attorney Miller's is $350; for legal work on the motion for award of attorney's fees, both lawyers reduced their hourly rate to $200. *Stark Aff.* ¶ 22; *Miller Aff.* ¶ 9. Attorney Stark billed a paralegal at $115 per hour. *Stark Aff.* ¶ 17.

In *Maine People's Alliance v. Holtrachem Manufacturing Company, LLC*, No. 1:00-cv-00069-JAW, 2016 U.S. Dist. LEXIS 135301 (D. Me. Sept. 30, 2016), the Court recently concluded that for the District of Maine, a $350 hourly rate applies to exceptionally experienced counsel, a $300 rate applies to most highly experienced counsel, a $250 hourly rate applies to most reasonably experienced lawyers, and the maximum rate for a paralegal is $95. *Id.* at *20-22. Based on the affidavits of counsel, the Court concludes that Attorney Miller is entitled to charge $350 per hour, that

---

[5]      Attorney Helfand, the Texas lawyer, entered his appearance pro hac vice and, as required by District of Maine Local Rule 839(c)(1), associated with local counsel.  At the same time, all three defense attorneys, Attorneys Helfand, Sherman, and Fouts, filed docket entries in this case.

Attorney Stark is entitled to charge $250 per hour, and that the paralegal rate should be capped at $95.[6]

Under First Circuit law, a prevailing party is "normally entitled to attorneys' fees incurred in the pursuit of fees" under a fee-shifting statute. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008). However, the First Circuit cautioned that the work "often amounts to little 'more than documenting what a lawyer did and why he or she did it.'" *Brewster v. Dukakis*, 3 F.3d 488, 494 (1st Cir. 1993) (citation omitted). Accordingly, time spent on fee litigation is compensated "at lower rates than those deemed reasonable for the main litigation." *Torres-Rivera*, 524 F.3d at 340. In other cases, courts in this District have approved substantially reduced rates for fee motion work. *IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172, 199 (D. Me. 2012) ($150); *DeSena*, 847 F. Supp. 2d at 213 ($147.50); *Cushing v. McKee*, 853 F. Supp. 2d 163, 176 (D. Me. 2012) ($150); *Sullivan v. City of Augusta*, 625 F. Supp. 2d 28, 48-49 (D. Me. 2009) ($150).

As time has passed since the last word on this issue, the Court approves the $200 rate that the attorneys have charged for work on the attorney's fee application.

---

[6]      GC did not object to the hourly rates in this case. Nevertheless for consistency, the Court applies the hourly rates that it and another judge in this District recently imposed. *Me. People's Alliance*, 2016 U.S. Dist. LEXIS 135301, at *20-22; *Prescott v. Rumford Hosp.*, No. 2:13-cv-00460-JDL, 2016 U.S. Dist. LEXIS 79170, at *3-8 (D. Me. June 17, 2016).

        As regards Attorney Stark's hourly rate, she seems to fall in the "most reasonably experienced lawyers" category as she is generally experienced, but this is, by her own admission, her first FDCPA and MFDCPA case in which she filed a notice of violation under 15 U.S.C. § 1692g and 32 M.R.S. § 11014, and she found it necessary to associate with Attorney Miller.

        As regards the paralegal rate, the rate is capped between $95 and $105 depending upon the paralegal's level of experience. *Prescott*, 2016 U.S. Dist. LEXIS 79170, at *6-7. The $105 hourly rate is reserved for "experienced specialized paralegals." *Id.* at *7 (quoting *Desena v. Lepage*, 847 F. Supp. 2d 207, 213-14 (D. Me. 2012)). Here, the evidence of the skill level of Ms. Billing does not convince the Court that she fits within the experienced specialized paralegals category.

### 2.      Time Expended: The Underlying Case

Ms. Archambault's motion reflects that Attorney Stark expended a total of 4.3 hours in general litigation, Attorney Miller expended 4.3 hours, and Amanda Billing expended 2.1 hours. *Pl.'s Reply* at 2; *Stark Aff.* ¶ 17; *Miller Aff.* ¶ 8. Although GC has made specific objections to certain entries, the Court overrules those objections.

### 3.      The Lodestar Calculation: The Underlying Case

The Court calculates the following attorney's fee award on the underlying case: (1) Attorney Stark: 4.3 x $250 = $1,075; (2) Attorney Miller: 4.3 x $350 = $1,505; and (3) Amanda Billing paralegal: 2.1 x $95 = $199.50.   The total amount for the underlying litigation is $ 2,779.50.

### 4.      Time Expended: The Attorney's Fee Motion

The Court reduces the hourly rate for pursuing the attorney's fee motion to $200.  In her reply, Ms. Archambault represented that she was seeking 8.6 attorney hours and 2.1 paralegal hours on the underlying litigation.  *Pl.'s Reply* at 2.  The rest of the time must be attributable to the fee application.

In Attorney Stark's first invoice, she billed 11.3 hours at $285 and 2.7 hours at $200, for a total of 14 hours.  *Stark Aff.* at 11.  Subtracting from her total hours the 4.3 hours she spent on the underlying litigation, this leaves 9.7 hours on the fee application to be reimbursed at $200 per hour, or $1,940.  In her second invoice, she sought additional fees for replying to GC's response and she charged an additional 2.4 hours, 1.0 of which she charged at $285 per hour and 1.4 at $200.  *Pl.'s Reply*

Attach. 6 *Fee Ledger 4/21/2016-5/2/2016*.  This results in an additional fee of $480 (2.4 x $200).  The total for Attorney Stark for the fee application is $2,420.

Attorney Miller's last work on the underlying case was on March 10, 2016 when she performed legal research on the offer of judgment.  *Miller Suppl. Aff.* at 3.  The remaining time, or 5.4 hours, was dedicated to the attorney's fee issue.  She is entitled to be paid at a rate of $200 for that work, or $1,080.

Amanda Billing worked a total of 2.3 hours on the case and Ms. Archambault has represented that 2.1 hours were spent on the underlying litigation, leaving 0.2 hours on the attorney's fee application.  *Pl.'s Reply* at 2; *Stark Aff.* ¶ 17.  She is entitled to be reimbursed $19 for that work (0.2 x $95).

The total amount for the attorney's fee motion is $3,519.00.

## IV.   CONCLUSION

The Court GRANTS in part and DENIES in part the Plaintiff's Motion for Attorney's Fees (ECF No. 10) and awards a total of $6,298.50.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2016

16